UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| VICTOR SANTACRUZ, LUIS SANTACRUZ, CIRILO MANCINAS LOPEZ, RAYMUNDO MARTINEZ, LUCIA GARCIA, and WILLIAM ALCANTAR,<br><br>Plaintiffs,<br><br>v.<br><br>SOUTHBANK DAIRIES, LLC, a Washington Limited Liability Company, and JERRY D. FOSTER, an individual,<br><br>Defendants. | CASE NO. C16-5200 RJB<br><br>ORDER ON DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' DELIBERATE INJURY CLAIM |

This matter comes before the Court on Defendants' Motion to Dismiss Plaintiffs' Deliberate Injury Claim. Dkt. 27. The Court has considered the pleadings filed regarding the motion and the remainder of the file.

Filed March 16, 2016, this case arises from Plaintiffs' employment at Defendants' dairy farm. Dkt. 1. In their First Amended Complaint, Plaintiffs assert that they did not receive all wages due, suffered uncompensated physical injuries, and experienced racial discrimination.

1  Dkt. 26. Plaintiffs make claims under the Fair Labor Standards Act, 29 U.S.C. 206, *et seq.*, the

2  Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. § 1802 *et seq.*, and make

3  state law claims under Washington's wage and hours laws, for discrimination in violation of

4  Washington's Law Against Discrimination, RCW 49.60, *et seq.*, breach of contract, for the

5  "deliberate intent to injure/personal injury," and for fraudulent concealment. *Id.*

6  Defendants move the Court for a second time for dismissal of Plaintiffs' "deliberate

7  intent to injure/personal injury" claim. Dkt. 27. For the reasons stated below, the motion to

8  dismiss (Dkt. 27) should be granted.

9  **I.   FACTS**

10  The following facts are taken from Plaintiff's First Amended Complaint. Plaintiffs, along

11  with around 25 other employees, worked for Defendants Southbank Dairies LLC ("Southbank")

12  and Southbank's owner, Defendant Jerry Foster. Dkt. 26, at 3-4. Southbank had anywhere

13  between 600-1,500 head of cattle in the operation during the relevant time. *Id.* Plaintiffs state

14  that they all identify as Latino and/or Mexican and all speak Spanish. *Id.*

15  Plaintiffs allege that they generally worked between six to seven days a week. *Id.,* at 4.

16  They assert that Mr. Foster regularly paid them for fewer hours than they worked. *Id.* Plaintiffs

17  maintain that Mr. Foster did not maintain records of his reduction of their hours. *Id.* Plaintiffs

18  assert that they were not given meal or rest breaks. *Id.*

19  In regard to their claim for deliberate intent to injure, Plaintiffs assert that Defendants failed

20  to provide adequate safety equipment or training, resulting in personal injury to Plaintiffs. *Id.,* at

21  27. Plaintiffs allege that they "were routinely exposed to health hazards such as pesticides, fish

22  waste, manure, extreme cold and heat, and violent animals without mitigating equipment or

23  training." *Id.* Plaintiffs assert that they were required to purchase all their own "gloves, work

24

1 boots, respiratory protection and jackets to avoid injury from workplace hazards such as cow

2 manure, blood, fish waste, pesticides, veterinary medicines, and other fluids that could be

3 harmful to their health." *Id.*, at 5.  They assert that Defendants provided white/non-Latino

4 employees better working conditions than Plaintiffs were given. *Id.*, at 6.

5     They assert that Defendants failed to post the required information informing Plaintiffs of

6 their right to medical care and lost wages under the state Workers' Compensation statutes until

7 after the fall of 2015. *Id.,* at 4-6 and 27-28.  Plaintiffs state that Defendants did not provide a

8 handbook in Spanish, or explain their rights as workers in any format. *Id*.  Plaintiffs allege that

9 when asked to assist in redressing workplace injuries, Defendants refused. *Id.,* at 27-28.

10     Plaintiffs maintain that their economic losses were worsened by Defendants' refusal to pay

11 medical care or engage in intervening safety measures. *Id.,* at 28. Plaintiffs assert that

12 Defendants also forced them to pay for "their own workers' compensation benefits out of

13 pocket." *Id.*

14     Plaintiffs assert that Defendants' actions were deliberate because they sought to avoid the

15 costs of both prevention and Plaintiffs actual medical care, causing injuries to Plaintiffs. *Id.*, at

16 28.  Further, they allege that Defendants actions were "discriminatory, intentional and did not

17 serve an essential business purpose." *Id*.  Plaintiffs maintain that Defendants intentionally

18 caused them injury by failing to inform them of their rights, taking advantage of their limited

19 understanding of English, and then refusing to pay for injuries. *Id.*

20     In addition to exposure to hazardous substances, Plaintiffs also assert that they sustained

21 other individualized injuries. *Id.*  Plaintiff Victor Santacruz states that he began working for

22 Defendants in the spring of 2005. *Id.,* at 6.  Mr. Victor Santacruz worked in the fields, did

23 construction and repair work, performed maintenance and cleaning, drove tractors and trucks,

24

and completed any other assigned tasks. *Id.* He alleges that he worked anywhere from 70-140 hours per week. *Id.* He asserts that he did not get paid for all the hours he worked. *Id.* As it relates to the current motion, Mr. Victor Santacruz alleges that he was physically injured on the job and Defendants did not inform him of his rights to Workers Compensation. *Id.,* at 9. He alleges that in 2007, while moving concrete blocks for Defendants, he was struck by a heavy metal chain and had two front teeth knocked out. *Id.*, at 10. He alleges that Defendants made him pay for the dental repair work out of his own pocket. *Id.* In 2008, he stepped on a rusty nail and his foot became infected. *Id.* Mr. Victor Santacruz asserts that Defendant Foster observed him limping. *Id.* He asserts that the Defendants did not offer to help and he worked for eight days with an infected foot. *Id.* In 2013, he was assigned to apply an acid wash to the hooves of the cows. *Id.* He alleges that "the cows often resist the treatment and take off running." *Id*. Mr. Victor Santacruz states that on one occasion, this acid was kicked back into his face and eyes. *Id.* He suffered from red painful eyes and had difficulty seeing for weeks. *Id.* Mr. Victor Santacruz asserts that "[b]ecause the Defendants deliberately deprived him of information regarding his rights to Worker's Compensation, [he] was injured . . . Had he known about his rights through postings, trainings, and accident forms, [he] would have sought medical coverage through industrial insurance." *Id.,* at 11. He alleges that other non-Latino workers were treated differently – they were helped when injured, medical care was provided, and they were paid for time off. *Id*.

    Plaintiff Luis Santacruz started working for Defendants in 2005, milking cows, harvesting, cleaning, doing construction, and performing other odd jobs. Dkt. 26, at 11-12. He alleges that he usually worked anywhere from 50-70 hours per week; during the harvest seasons he worked more than 110 hours per week. *Id.* He asserts that he did not get paid for all the hours he

worked.  *Id.*  As it relates to the current motion, Mr. Luis Santacruz alleges that in or around the summer of 2006, while shoeing a cow, the cow kicked, flipping iron toward Mr. Luis Santacruz, striking him in the mouth.  *Id.,* at 13.  He alleges that his tooth was damaged, and that the Defendants failed to inform him of his rights under Worker's Compensation.  *Id.*  Mr. Luis Santacruz asserts that had he known of his rights, he would have gone to the dentist.  *Id.*

Plaintiff Cirilo Mancinas López was hired in 2008 to feed the pigs, clean the pens, cover shifts in the milking parlor, and for other tasks.  *Id.*, at 15.  He also alleges that he worked 10-15 hours a day and was not properly compensated.  *Id.*  As it relates to the current motion, Mr. Mancinas was kicked in the left shoulder by a cow in 2014 while at work.  *Id.,* at 18. Defendant Foster witnessed the accident and laughed, and warned Mr. Mancinas to be careful about the new cows.  *Id*.  Mr. Mancinas states that the next day, his heart was "hurting badly," and so went to the hospital.  *Id.*  The doctor told him that he "had an inflamed nerve near his heart and was causing the pain."  *Id.*  He alleges that the hospital sent the bill to his home for this workplace injury.  *Id.*  He states he cannot pay it and his account has been sent to collections.  *Id.*  He asserts that Defendants did not inform him of his rights to worker's compensation.  *Id.*  Mr. Mancinas maintains that, in or around March or April of 2015, while applying veterinary acid to the cows' hooves, he fell and acid got all over his face and chest.  *Id.,* at 19. He alleges that Defendants did not offer assistance.  *Id*.  Mr. Mancinas maintains that Defendants charged him for protective gear like protective pants and boots.  *Id.*

Plaintiff Raymundo Martínez was hired around April 26, 2008 to perform a variety of functions on Defendants' property, including driving trucks transporting fish waste and other materials.  Dkt. 26*,* at 19-20.  Mr. Martínez asserts that he was offered $9.50, regularly worked in excess of 100 hours a week, and Defendants failed to properly compensate him.  *Id.,* at 20. As is

1 relevant to the current motion, Mr. Martínez alleges that in the summer of 2015, he injured his

2 ankle. *Id.,* at 21. He asserts that Defendant Foster insisted that he come into work even though

3 the ankle was not functional. *Id.* Mr. Martínez maintains that Defendant Foster did not offer

4 him light duty, or inform him of his rights under state law for workers' compensation insurance

5 even though Defendants deducted his pay for "insurance." *Id.* He alleges that he asked

6 Defendants for safety gear to protect him from the fumes emanating from the fish acid, cow

7 manure and other protective gear. *Id.,* at 22. Defendants refused. *Id.*

8       Plaintiff Lucia García was hired in January of 2012. Dkt. 26, at 23. She worked 12 hour

9 shifts caring for the cows and giving the cows medicine. *Id.* She also asserts that Defendants did

10 not properly compensate her, and that she rarely, if ever, got meal and rest breaks. *Id.,* at 19-20.

11 On July 24, 2015, Ms. García was assaulted by a coworker, who struck her numerous times and

12 choked her, leaving bruises and marks on her skin. *Id.*, at 20. She reported the assault to

13 Defendant Foster, who "laughed it off" and did not reprimand the other employee. *Id.,* at 24.

14 Defendant Foster did not offer any medical or other assistance to her. *Id.* She asserts that he

15 "ratified" her attacker's physical abuses, "dismissing it as matters between women." *Id.*

16       **II.**    **<u>DISCUSSION</u>**

17  A. **STANDARD ON MOTION TO DISMISS**

18       Fed. R. Civ. P. 12(b)(6) motions to dismiss may be based on either the lack of a

19 cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.

20 *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations

21 are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*,

22 717 F.2d 1295 (9th Cir. 1983). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss

23 does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his

24

1  entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the
2  elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955,
3  1964-65 (2007)(*internal citations omitted*).  "Factual allegations must be enough to raise a right
4  to relief above the speculative level, on the assumption that all the allegations in the complaint
5  are true (even if doubtful in fact)." *Id*. at 1965.  Plaintiffs must allege "enough facts to state a
6  claim to relief that is plausible on its face." *Id*. at 1974.

7  If a claim is based on a proper legal theory but fails to allege sufficient facts, the plaintiff
8  should be afforded the opportunity to amend the complaint before dismissal. *Keniston v. Roberts*,
9  717 F.2d 1295, 1300 (9th Cir. 1983). If the claim is not based on a proper legal theory, the claim
10 should be dismissed. *Id*. "Dismissal without leave to amend is improper unless it is clear, upon
11 de novo review, that the complaint could not be saved by any amendment." *Moss v. U.S. Secret*
12 *Service,* 572 F.3d 962, 972 (9th Cir. 2009).

13 **B. CLAIM FOR DELIBERATE INJURY UNDER WASHINGTON'S RCW 51.24.020**

14 Under Washington's Industrial Insurance Act, "all civil actions and civil causes of action for
15 [workplace] personal injuries and all jurisdiction of the courts of the state over such causes of
16 action are hereby abolished." RCW 51.04.010.  Employers are not immune from suit, however,
17 "[i]f injury results to a worker from the deliberate intention of his or her employer to produce
18 such injury . . . ." RCW 51.24.020.  "Washington courts have consistently interpreted RCW
19 51.24.020 narrowly, holding that mere negligence, even gross negligence, does not rise to the
20 level of deliberate intention." *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16,
21 27 (2005).

22 "The phrase 'deliberate intention' in RCW 51.24.020 means (1) the employer had actual
23 knowledge that an injury was certain to occur and (2) the employer willfully disregarded that

24

knowledge." *Vallandigham*, at 27–28 (*internal citations and quotations omitted*). "Disregard of a risk of injury is not sufficient to meet the [first] prong; certainty of actual harm must be known and ignored." *Id.*, at 28. As to the second prong, negligence or gross negligence is insufficient. *Id.*

In their second motion to dismiss Plaintiffs' deliberate injury claim (after it was re-pled in the First Amended Complaint), Defendants argue that Plaintiffs have again failed to plead sufficient facts to establish a plausible deliberate injury claim. Dkt. 27. Defendants again argue that: Plaintiffs did not plead facts sufficient to show the Defendants had actual knowledge that injury was certain and willfully disregarded that knowledge. *Id.* Defendants argue that the Court should enter judgment against Plaintiffs on this claim because they failed to state facts sufficient to confer subject matter jurisdiction on this Court for this claim. *Id.*

Plaintiffs respond and argue that Defendants had actual knowledge that injury to Plaintiffs was certain to occur when Defendants "willfully deprived them [of] required health and safety protections, including information about their rights, then ignored Plaintiffs' injuries when Defendants had actual firsthand knowledge that injury had occurred." Dkt. 28. Plaintiffs acknowledge that their claim presents a "novel question of law: whether intentionally concealing workers' compensation information and not reporting workplace accidents . . . may make out a claim for a separate and compensable personal injury subject to the deliberate harm exemption in the Industrial Welfare Act." *Id.*, at 2-3. They argue that they were first injured when Defendants ignored state and federal safety regulations and Plaintiffs were injured as a result. *Id.* Plaintiffs assert that they were injured a second time when Defendants "knowing of their injuries, exploited Plaintiffs' inexperience and language barriers to keep them from filing claims for Workers' Compensation." *Id.*, at 3.

Defendants' motion to dismiss (Dkt. 27) Plaintiffs' claims for deliberate intent to injure/personal injury claim should be granted. Plaintiffs fail to show that Defendants (1) had actual knowledge that an injury was certain to occur and (2) the employer willfully disregarded that knowledge." *Vallandigham*, at 27–28 (*internal citations and quotations omitted*). In the prior order dismissing this claim, the Court held:

> Plaintiffs allege that they speak only Spanish and that Defendants failed to inform them of their rights generally under the various employment statutes. Plaintiffs contend that Defendants were collecting "L & I insurance" premiums from them, but refused to explain it. Plaintiffs assert that when they were injured, Defendants failed to assist them, and failed to inform them of their rights under the workers' compensation statutes. Those allegations do not seem to fit the intent of RCW 51.24.020. An "injury," "interpreted narrowly" under that statute does not include a failure to know of and understand the state workers' compensation scheme, although arguably such lack of information and understanding will lead to a loss of benefits. While the undersigned takes a dim view of a defendant's use of the workers' compensation statutes as a shield when, if Plaintiffs allegations are correct, the defendant failed to inform Plaintiffs of their benefits under those very statutes, it is not clear that this is a valid claim under the law as pled. Nor does the statute grant this Court jurisdiction and allow them to seek relief for the physical and emotional injuries that Plaintiffs' suffered, because although Plaintiffs allege such injuries were likely, they do not allege that the Defendants had "actual knowledge that those injuries were certain to occur" and "willfully disregarded that knowledge." *Vallandigham*, at 27–28.

Dkt. 25, at 9. The analysis has not changed. Plaintiffs' claim for deliberate intent to injure should be dismissed.

Moreover, it appears from Washington's workers' compensation statute that at least some of the Plaintiffs may still be entitled to relief under that statute. *See* RCW 51.28.025 generally and RCW 51.28.025(5) (providing that if it is determined that an employer has engaged in claim suppression, "and as a result, a worker has not filed a claim for industrial insurance benefits. . . then the director . . . may waive the time limits for filing a claim . . . if the complaint or allegation of claim suppression is received within two years of the worker's accident or exposure).

ORDER ON DEFENDANTS' MOTION TO
DISMISS PLAINTIFFS' DELIBERATE INJURY
CLAIM- 9

### III. ORDER

It is **ORDERED** that:

- Defendants' Motion to Dismiss Plaintiffs' Deliberate Injury Claim (Dkt. 27) **IS GRANTED;**
    - Plaintiffs' Deliberate Injury Claims are **DISMISSED.**

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 19th day of October, 2016.

*[signature]*

ROBERT J. BRYAN
United States District Judge